**Lillian E. TOOMBS, Plaintiff,**

v.

**GREER–SMYRNA, INC., Defendant.**

**No. 80–3441.**

United States District Court,
M. D. Tennessee,
Nashville Division.

Jan. 8, 1982.

498

R. Jan Jennings and James G. Stranch, III, Nashville, Tenn., for plaintiff.

Charles Hampton White, Nashville, Tenn., for defendant.

## MEMORANDUM

WISEMAN, District Judge.

This cause is before this Court on the objections of defendant Greer-Smyrna, Inc., to the report of the Special Master in the cause finding defendant liable for sex discrimination in violation of Section 703(a)(1) of Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e–2(a)(1). Defendant objects to the Special Master's report on essentially three grounds: (1) that the Special Master and this Court lack jurisdiction to hear plaintiff's claim; (2) that the Special Master's findings of fact are clearly erroneous; and (3) that the Special Master conclusions of law are inaccurate. For the reasons stated below this Court denies all of defendant's objections and affirms the report of the Special Master.

### Jurisdiction

Defendant Greer-Smyrna, Inc., argues that the Special Master was without jurisdiction to hear this cause because plaintiff Lillian E. Toombs failed to satisfy the jurisdictional prerequisites for filing suit set forth in 42 U.S.C. § 2000e–5. Plaintiff Toombs filed a charge of sex discrimination against defendant Greer-Smyrna, Inc., but did not file a charge with the Tennessee Commission for Human Development [TCHD], as is seemingly required under Title VII. Moreover, after receiving plaintiff's charge, the EEOC did not refer it to the TCHD. Defendant argues that because no charge of sex discrimination was ever filed with the TCHD, plaintiff's charge filed with the EEOC was not timely. This Court disagrees.

42 U.S.C. § 2000e–5(c) provides:

In the case of an alleged unlawful employment practice occurring in a State, or political subdivision of a State, which has a State or local law prohibiting the unlawful employment practice alleged and establishing or authorizing a State or local authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, no charge may be filed under subsection (b) of this section by the person aggrieved before the expiration of sixty days after proceedings have been commenced under the State or local law, unless such proceedings have been earlier terminated, provided that such sixty-day period shall be extended to one hundred and twenty days during the first year after the effective date of such State or local law . . . .

The essence of this provision is that an individual who has allegedly suffered discrimination in employment should first seek relief from the appropriate state discrimination agency, if one exists, before the EEOC becomes involved. The provision demonstrates a clear preference for initial state involvement in any investigation of an alleged discriminatory employment practice. The EEOC must defer any action on its part for sixty days (or 120 days in the case of a new agency) after a charge has been filed with the appropriate state agency or until completion of the state investigation, whichever comes first.[1]

While section 2000e–5(c)'s focus thus seems simple, its application is sometimes complicated. Not infrequently, as in the instant case, a complainant will file his charge only with the EEOC and fail to file anything with the state agency. Fortunately for the unwary layman, the Supreme Court held in *Love v. Pullman Co.*, 404 U.S. 522, 92 S.Ct. 616, 30 L.Ed.2d 679 (1972), that the EEOC can refer a charge to the appropriate state agency and hold the charge in "suspended animation" until the deferral period expires. Upon expiration of the deferral period the charge is treated as auto-

---

1. Title VII actually requires only that state proceedings be *commenced* before the EEOC may investigate a charge. The EEOC may begin action on a charge even if a state investigation is ongoing as long as the requisite 60 or 120 day deferral period has expired. *See Oscar Mayer & Co. v. Evans*, 441 U.S. 750, 99 S.Ct. 2066, 60 L.Ed.2d 609 (1979). Conversely, if the state agency concludes its investigation prior to expiration of the deferral period, the EEOC may act even though the full deferral time has not passed. *See Yeung v. Lockheed Missiles & Space Co., Inc.*, 504 F.Supp. 422 (N.D.Cal. 1980).

matically filed with the EEOC. Federal regulations now in fact require the EEOC to follow this referral/deferral process whenever an individual files his initial charge with the EEOC. 29 C.F.R. § 1601.-13 (1981). These regulations were in effect when plaintiff filed her charge with the EEOC.

A problem develops, however, when the EEOC ignores the regulatory requirements and fails to refer a charge to the state. That is what happened here. Plaintiff Toombs filed her charge of sex discrimination against defendant Greer-Smyrna, Inc., only with the EEOC. Plaintiff never filed a charge of any sort with the Tennessee Commission for Human Development, and the EEOC did not refer her charge to the TCHD.[2] Instead, the EEOC investigated plaintiff's claim, failed to resolve the matter itself, and issued a right-to-sue letter to plaintiff. Plaintiff filed her complaint in

this case within the ninety-day statutory period after receiving the right-to-sue letter. *See* 42 U.S.C. § 2000e–5(f)(1).

The question thus presented to this Court is whether the EEOC's failure to refer plaintiff's charge to the TCHD renders her EEOC charge untimely and deprives this Court of jurisdiction to review plaintiff's claim. Defendant argues that plaintiff's failure to file a charge with the TCHD and the EEOC's failure to refer the charge that it received violated the explicit statutory requirements of Title VII and that therefore a valid, timely charge was never filed with the EEOC itself. In other words, defendant argues that because section 2000e–5(c) declares that no charge may be filed with the EEOC until after a charge has been filed with the state agency, no charge was ever filed with the EEOC because no charge was ever filed with the TCHD.[3]

---

**2.** It is unclear why the EEOC did not refer plaintiff's charge to the TCHD. It seems likely, however, that the failure to refer was due at least in part to the newness of the TCHD at the time plaintiff filed her charge with the EEOC. The TCHD was created by legislation effective March 29, 1978. T.C.A. §§ 4–21–101 *et seq.* Pursuant to 29 C.F.R. § 1601.70, the EEOC determines whether a given state agency meets the requirements for an agency to which the EEOC will defer. On January 22, 1979, the EEOC gave notice that it was evaluating the TCHD for status as a "706 agency." (State agencies are deemed "706 agencies" since Title VII's deferral section, codified now at 42 U.S.C. § 2000e–5(c), was section 706(c) of the Act.) The EEOC classified the TCHD as a 706 agency on March 16, 1979. Plaintiff filed her charge with the EEOC on February 26, 1979, a few weeks before the TCHD was designated a 706 agency by the EEOC, but nearly a year after the TCHD came into existence under state law. The TCHD and the EEOC did not enter into a work-sharing agreement concerning deferral procedures until April 27, 1979. Apparently, because the TCHD and the EEOC had not developed its deferral relationship at the time that plaintiff filed her charge with the EEOC, the EEOC determined that deferral was unnecessary. Indeed, the EEOC notified plaintiff in regard to her charge that "timeliness and all other jurisdictional requirements have been met." Nevertheless, because a state agency's status as an antidiscrimination agency depends essentially on state law, the EEOC should have referred plaintiff's charge to the TCHD. *See Mitchell v. Mid-Continent Spring Co.*, 466 F.2d 24 (6th Cir. 1972), *cert. denied*, 410 U.S. 928, 93

S.Ct. 1363, 35 L.Ed.2d 589 (1973). *Cf. Leis v. Opportunity Consultants*, 441 F.Supp. 1314 (S.D.Ohio 1977). Moreover, because the TCHD was less than one year old at the time of plaintiff's charge, the EEOC should have deferred its own action for 120 days after referral. 42 U.S.C. § 2000e–5(c).

**3.** Under 42 U.S.C. § 2000e–5(e), a charge must be filed with the EEOC within 180 days of the occurrence of the alleged discriminatory practice. If state agency proceedings have been commenced, this limitations period is extended to 300 days under the statute. When a party does not himself initiate state proceedings but instead files a charge only with the EEOC, the 300 day limit is effectively shortened because the EEOC must refer the charge to the state agency and then defer action for the appropriate period. Because the charge cannot be legally filed with the EEOC until the deferral period expires, a complainant in a referral situation must have filed his referral charge sufficiently soon to permit the deferral period to be encompassed within the 300 day limit.

Defendant's claim here centers on the deferral problem and meshes several considerations. Primarily, defendant's position is that the EEOC cannot take any action, and a plaintiff therefore cannot sue, if a charge has not been filed with the appropriate state agency. Since no state charge was ever filed in this case, defendant argues that plaintiff could not have filed a valid charge with the EEOC. Relatedly, defendant contends that plaintiff's claim is untimely in any event, since a charge was not filed with the TCHD and the 300 day limiting

The filing of a charge with the EEOC is, of course, a jurisdictional prerequisite to a suit in this Court.

A strict technical reading of section 2000e–5(c) would seem to support defendant's contention. This Court does not believe, however, that such a reading is warranted or that the spirit and focus of Title VII would permit the result that defendant seeks—dismissal of plaintiff's claim. The Supreme Court indicated clearly in *Love v. Pullman Co., supra,* that a complainant is not to be penalized for failing to follow the technical filing requirements of Title VII. As the Court stated, the imposition of strict procedural technicalities, such as the dual filings rejected in *Love,* "are particularly inappropriate in a statutory scheme in which laymen, unassisted by trained lawyers, initiate the process." [4]   404 U.S. at 527, 92 S.Ct. at 618–19, 30 L.Ed.2d at 685. If a complainant is not prejudiced by his own failure to file a charge with a state antidiscrimination agency, surely he should not suffer for the EEOC's misfeasance in disregarding its regulatory duty.

The issue presented to this Court was recently squarely addressed by the Ninth

Circuit in *Roberts v. Arizona Board of Regents,* 661 F.2d 796 (9th Cir. 1981). The plaintiff in *Roberts,* like plaintiff Toombs here, had filed a charge of discrimination with the EEOC but had not filed a charge with the Arizona Civil Rights Division, the appropriate state agency. As here, the EEOC in *Roberts* failed to refer the complainant's charge to the state agency.[5] Relying on the Supreme Court's opinion in *Love v. Pullman Co.,* the Ninth Circuit rejected the defendant's claim that plaintiff's charge was untimely filed because of the EEOC's inaction. As the court stated,

> We are ... unwilling to allow the EEOC's violation of its own procedural regulations to redound to [plaintiff's] detriment. . . . To require a plaintiff ... to protect herself against the EEOC's possible violation of its own regulations by simultaneously filing a charge with the appropriate state agency would be wholly inconsistent with the rationale of *Love.*

661 F.2d at 799–800.[6]

Although the *Roberts* decision is not controlling in this Circuit, this Court finds the Ninth Circuit's reasoning highly persuasive. Moreover, this Court believes that the re-

---

period for filing with the EEOC expired. *See Mohasco Corp. v. Silver,* 447 U.S. 807, 100 S.Ct. 2486, 65 L.Ed.2d 532 (1980).

**4.** In oral argument before this Court defendant alluded to the fact that plaintiff had at one point been represented by counsel in a related matter before filing her charge with the EEOC. Defendant argued that her failure to file a charge with the TCHD therefore was inexcusable, since she allegedly had readily available legal advice concerning Title VII's filing requirements. Such a contention is without merit. The applicability of the Supreme Court's ruling in *Love* to a particular case is not dependent upon whether the plaintiff has been represented by legal counsel. *See Heiniger v. City of Phoenix,* 625 F.2d 842 (9th Cir. 1980).

**5.** In *Roberts,* plaintiff, a member of the Police Department at Arizona State University, filed a charge of sex discrimination with the EEOC against the university on September 10, 1975. The EEOC did not refer plaintiff's charge to the Arizona Civil Rights Division [ACRD]. On November 28, 1975, plaintiff filed a charge with the ACRD. In the district court proceedings the defendant university moved for dismissal of all of plaintiff's claims based on events occurring prior to June 1, 1975. The district court

granted defendant's motion. Because plaintiff alleged sex discrimination in wages, training, qualifications, testing, promotions, job assignments, seniority, job classification, and job advertisement, her case was impaired by the June 1, 1975, cut-off date. In determining the June 1 date the district court had taken the November 28, 1975, date, on which plaintiff had filed a charge with the ACRD, added a 120 day deferral period, and then calculated the 300 day limitations period. The Ninth Circuit disagreed with the district court's method of determining the limiting period. The Ninth Circuit ruled that the 120 day deferral period should have begun on September 10, when plaintiff filed her charge with the EEOC, and would in fact have begun but for the EEOC's failure to refer plaintiff's charge to the ACRD. Consequently, the court held that the appropriate cut-off date was March 15, 1975.

**6.** The Fifth Circuit has also taken the position that a plaintiff's case is not jeopardized because the EEOC fails to refer the plaintiff's charge to the state. *See White v. Dallas Independent School District,* 581 F.2d 556 (5th Cir. 1978).

**502**

sult reached by the Ninth Circuit in *Roberts* is compatible with the view taken generally by the Sixth Circuit with regard to the technical filing requirements of Title VII. Although it has never addressed the specific issue presented in this case, the Sixth Circuit has consistently refused to deny claimants access to the courts because of noncompliance with Title VII's provisions regarding state antidiscrimination proceedings. For example, in *Mitchell v. Mid-Continent Spring Co.*, 466 F.2d 24 (6th Cir. 1972), *cert. denied*, 410 U.S. 928, 93 S.Ct. 1363, 35 L.Ed.2d 589 (1973), plaintiff filed a sex discrimination charge with the EEOC but failed to file a charge with the Kentucky Human Rights Commission [KHRC]. The EEOC failed to refer plaintiff's charge to the KHRC, as it was authorized to do by the decision in *Love v. Pullman Co.*, and consequently no charge was ever filed with the KHRC before plaintiff was issued a

right-to-sue letter and initiated federal court action. The district court dismissed plaintiff's suit for failure to satisfy the jurisdictional prerequisites of Title VII. The Sixth Circuit reversed the district court's ruling and remanded the case with instructions that the district court retain jurisdiction for a period sufficient to allow plaintiff or the EEOC to seek redress via the KHRC. The Sixth Circuit clearly felt that dismissal of plaintiff's suit was unwarranted. As the court stated, "It is clear that [plaintiff] should not lose her cause of action because of the failure of the EEOC to refer her complaint to a State agency." [7] 466 F.2d at 27. More recently, in *Ferguson v. Kroger Co.*, 545 F.2d 1034 (6th Cir. 1976), the Sixth Circuit refused to deny plaintiff's claim because of the EEOC's tardiness in referring plaintiff's religious discrimination charge to the state agency. Plaintiff filed her charge solely with the EEOC. The

7. After remand, plaintiff in *Mitchell* apparently pursued her state remedies, although unsuccessfully, before again seeking relief through the federal courts. *Mitchell v. Mid-Continent Spring Co.*, 583 F.2d 275, 276 n.1 (6th Cir. 1978). Defendant Greer-Smyrna, Inc., here has argued for outright dismissal of plaintiff Toombs' action, rather than for abeyance of these federal proceedings while state proceedings are commenced as in *Mitchell*. Defendant contends that abeyance of the federal proceedings and referral to the TCHD now would be pointless since the 180 day period for filing charges with the TCHD has long expired. *See* T.C.A. § 4–21–115(a). The Special Master below agreed with defendant that an abeyance of proceedings would serve no purpose here but declined to dismiss plaintiff's action. This Court agrees with the action of the Special Master.

As is obvious from *Mitchell*, an abeyance of federal action pending the commencement of state proceedings is an acceptable method to accommodate all interests involved in an employment discrimination suit when, for whatever reason, the state process has been initially overlooked by a plaintiff. *See also Crosslin v. Mountain States Telephone & Tel. Co.*, 400 U.S. 1004, 91 S.Ct. 562, 27 L.Ed.2d 618 (1971). Moreover, the Supreme Court has stated that the timeliness of the state discrimination charge has no effect upon a complainant's federal rights. *Oscar Mayer & Co. v. Evans*, 441 U.S. 750, 759–60, 99 S.Ct. 2066, 2073, 60 L.Ed.2d 609, 617–18 (1979). Given the circumstances of this case, however, this Court concludes that abeyance and deferral would serve no useful purpose. Certainly, a state antidis-

crimination agency should usually have the opportunity to act on discrimination claims if it desires. This is the philosophy of Title VII's deferral process and is recognized in the EEOC's own regulations. *See Saulsbury v. Wismo & Becker, Inc.*, 644 F.2d 1251 (9th Cir. 1981); *Albano v. General Adjustment Bureau, Inc.*, 478 F.Supp. 1209 (S.D.N.Y.1979).

As this Court has noted, however, it is also the philosophy of Title VII that a complainant's rights not be prejudiced by confusion resulting from the technical filing requirements of Title VII. *Love v. Pullman Co.*, 404 U.S. 522, 92 S.Ct. 616, 30 L.Ed.2d 679 (1972). A plaintiff should especially not be handicapped when the violation of the filing requirements is directly the fault of the EEOC. Consequently, when, as in this case, the interests of the plaintiff are weighed against those of the state agency, the plaintiff's interests must prevail. Referral to the TCHD would be pointless and would only delay resolution of this dispute. At least one other court has reached a similar conclusion. *See Leis v. Opportunity Consultants*, 441 F.Supp. 1314 (S.D. Ohio 1977). There would be no question that plaintiff's claim here was timely filed with the EEOC, had the EEOC referred the charge to the TCHD and waited for expiration of the 120 day deferral period to act. Plaintiff's charge would easily have met the 300–day filing requirement of Title VII since her charge with the EEOC was filed within 180 days of the alleged discriminatory practice. *See Mohasco Corp. v. Silver*, 447 U.S. 807, 100 S.Ct. 2486, 65 L.Ed.2d 532 (1980).

EEOC subsequently referred the charge to the KCHR but did so only after the state limitations period had expired. The district court dismissed plaintiff's complaint because plaintiff's charge had been untimely filed with the KCHR, but the Sixth Circuit reversed, declaring that under *Love v. Pullman Co.* plaintiff had done all that was required of her by filing with the EEOC. The Sixth Circuit stated emphatically that "the administrative delay of the EEOC in this case in failing to follow its own established procedures does not defeat this claimant's right to an action asserting religious discrimination in the United States District Court." 545 F.2d at 1035.

Given these considerations, this Court cannot agree with defendant Greer-Smyrna, Inc., that plaintiff's action should be dismissed. When a complainant has done all that the Supreme Court has stated is required of her in filing a charge with the EEOC, she should not be penalized because the EEOC ignores its own regulations and fails to refer the charge to the appropriate state agency. To so punish plaintiff would impose upon her a burden that the Supreme Court has declared manifestly counter to the purpose, philosophy, and intent of Title VII. *See Love v. Pullman Co., supra.* Plaintiff's claim was thus timely filed with the EEOC, and this Court has jurisdiction to determine the merits of her case.

### Merits

Plaintiff Toombs claims that defendant Greer-Smyrna, Inc., discriminated against her on the basis of sex in refusing to rehire her on three different occasions when positions came open after plaintiff had been initially laid off by defendant. Defendant argued that its refusal to rehire plaintiff was based on legitimate, nondiscriminatory factors relating to plaintiff's health and physical capabilities.[8] The Special Master ruled that defendant had illegally discriminated against plaintiff in refusing to rehire her for two of the three positions.

The Court held oral arguments on defendant's objections to the Special Master's report and has reviewed thoroughly the record of the proceedings before the Special Master.[9] This Court now affirms the Special Master's determinations.

Plaintiff Toombs prosecuted this case on the disparate treatment theory of employment discrimination. Under that theory, plaintiff had first to establish a prima facie case of discrimination by demonstrating (a) that she is a woman, (b) that she applied and was qualified for the jobs in question here, (c) that she was rejected, and (d) that after she was rejected defendant continued to seek applications from persons with her qualifications. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The Special Master concluded that plaintiff had demonstrated a prima facie case, and this Court agrees.

Because a prima facie case was shown, defendant was required to articulate some legitimate, nondiscriminatory reason for its refusal to rehire plaintiff for the positions that were available. *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Defendant argued that it had not rehired plaintiff because it believed that she was incapable of adequately performing the

---

**8.** Specifically, defendant argued that plaintiff was subject to fainting spells caused at least in part by fumes prevalent in defendant's plant and that plaintiff could not lift the various amounts of weight required for each job.

**9.** In reviewing the Special Master's report and the transcript of the proceedings below, this Court has employed a *de novo* standard of review. This Court referred this matter to the Special Master pursuant to 42 U.S.C. § 2000e–5(f)(5), not 28 U.S.C. § 636(b)(2), as the Special Master stated in his report. In *Hill v. The*

*Duriron Co., Inc.*, 656 F.2d 1208 (6th Cir. 1981), the Sixth Circuit specifically left unanswered the question of whether a *de novo* or "clearly erroneous" review standard should be applied by a district court to matters referred pursuant to 42 U.S.C. § 2000e–5(f)(5). Because this matter was referred on plaintiff's motion without defendant's consent and because of the important nature of Title VII disputes, this Court believes that *de novo* review is appropriate. *Cf. Oliver v. Allison*, 488 F.Supp. 885 (D.D.C. 1980).

tasks required by each position because of her health and her alleged inability to lift certain amounts of weight. These reasons offered by defendant satisfied the *Burdine* test for rebutting plaintiff's prima facie case.

The Special Master also concluded, however, that plaintiff demonstrated that defendant's reasons for not rehiring plaintiff were pretextual. *See McDonnell Douglas Corp. v. Green, supra.* Plaintiff proved to the satisfaction of the Special Master that defendant's reasons were not justified in fact, and having reviewed the record, this Court must reach a similar conclusion. Defendant's reasons for not rehiring plaintiff were pretextual. Consequently, this Court concludes that plaintiff was illegally discriminated against on the basis of sex in violation of 42 U.S.C. § 2000e–2(a)(1).[10]

The report of the Special Master is affirmed.

---

**10.** Although he found defendant guilty of sex discrimination against plaintiff, the Special Master did not order either payment of money damages or the hiring of plaintiff. Instead, the Special Master granted plaintiff injunctive relief requiring defendant to restore plaintiff's bidding rights on jobs for six months and to give good faith consideration to any job application that plaintiff might make in the future.

The Special Master also enjoined defendant from engaging in sex discrimination in the future. While this Court finds the relief granted here to be somewhat unusual in that defendant was not ordered to provide a position for plaintiff, plaintiff has not questioned the Special Master's order of relief. Consequently, this Court will not disturb the relief granted.